UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASSOCIATED   PHYSICIANS
OF DEARBORN, PLLC,

    Plaintiff,

       v.

UNITED  PARCEL  SERVICE,
INC.,

    Defendant.

Case No. 25-cv-10278

Honorable Robert J. White

---

**ORDER GRANTING DEFENDANT'S MOTION TO
COMPEL ARBITRATION**

---

This case involves Plaintiff Associated Physicians of Dearborn, PLLC's claims against Defendant United Parcel Service, Inc. (UPS) for breach of statutory duties under 49 U.S.C. § 14706, *et seq.*, negligence, breach of contract, and conversion. Plaintiff alleges that Defendant lost and failed to deliver a roughly $28,300 shipment of medical supplies. (ECF No. 1). Before the Court in this matter is Defendant's motion to compel arbitration. (ECF No. 15). The Parties fully briefed the motion and the Court will decide it without oral argument pursuant to Local Rule 7.1(f)(2). For the following reasons, the Court grants the motion to compel arbitration.

## I.   Background

Defendant argues that Plaintiff's shipment, "like all UPS shipments, is subject to the UPS Tarriff/Terms and Conditions of Service" (the UPS Tarriff/Terms) that include binding arbitration provisions which cover the claims at issue. (ECF No. 15, PageID.82).  The UPS Tarriff/Terms provide, in relevant part:

> Claimant and UPS agree that . . . any controversy or claim, whether at law or equity, arising out of or related to the provision of services by UPS, regardless of the date of accrual of such dispute, shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration.  Claimant and UPS expressly agree that the foregoing obligation to arbitrate disputes regardless of the date of accrual of such disputes includes, but is not limited to, preexisting disputes and disputes that arise from or relate to Packages shipped at the time of a previous version of these Terms.  Claimant and UPS further agree that the foregoing obligation to arbitrate disputes applies to claims brought by UPS against Claimant, regardless of whether Claimant has also brought a claim against UPS.

(ECF No. 15-1, PageID.139).

The terms also state:

> CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST CLAIMANT, UPS OR RELATED THIRD PARTIES;
>
> CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO HAVE A COURT . . . RESOLVE ANY DISPUTE ALLEGED AGAINST CLAIMANT, UPS OR RELATED THIRD PARTIES;

(ECF No. 15-1, PageID.140).

According to Defendant, Plaintiff agreed to these arbitration provisions when processing the shipment at issue through the UPS website, which (1) requires users to check a box verifying such assent before a shipment is processed and (2) displays a hyperlink to the complete UPS Tarriff/Terms when users are asked to assent thereto. (ECF No. 15, PageID.85-87).  Defendant provides (1) an image of the check box and hyperlinks Plaintiff would have seen when placing its order; (2) a physical record detailing Plaintiff's shipment information; and (3) the declaration of Wynn Rasmuson, one of Defendant's managers, stating in relevant part that (a) shippers "must confirm their acceptance" of the UPS Tarriff/Terms when processing a shipment online, and (b) "[i]t is not possible . . . to purchase a UPS shipping label through ups.com without checking the box . . . ." (ECF No. 15-1, PageID.101-07, 109).

Rasmuson also states:

> Based on my review, Plaintiff processed the Subject Package for shipment on ups.com as a guest user.  When processing the Subject Package as a guest user, Plaintiff was presented with a click-through screen under a header titled, "Terms and Conditions," that disclosed that the UPS Tariff/Terms apply to the shipment and that by creating a shipment, Plaintiff agreed to be bound by the UPS Tariff/Terms and would not attempt to ship any items on a "List of Prohibited Articles for Shipping."  Included in prominent blue, underlined font were hyperlinks to open and view the UPS Tariff/Terms and List of Prohibited Articles for Shipping.  Plaintiff was also required to check a box, directly next to the words, "By creating this shipment, I am agreeing to the UPS Tariff/Terms and Conditions of Service" and "I will not attempt to ship any items prohibited by UPS . . . ."  To proceed,

3

> Plaintiff also had to click a final button, with the prominent text "Pay and Get Label(s)."

(ECF No. 15-1, PageID.106).

Plaintiff's counterarguments are addressed in the analysis that follows.

## II.      Legal Standard

In deciding a motion to compel arbitration, a court "must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F. 3d 997, 1001 (6th Cir 2009).   Stated somewhat differently and with greater nuance, (1) the court "must determine whether the parties agreed to arbitrate;" (2) "it must determine the scope of that agreement;" (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non[-]arbitrable;" and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.[1]" *McGee v. Armstrong*, 941 F. 3d 859, 865 (6th Cir. 2019).

---

[1] The United States Supreme Court recently held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024).  Defendant here requests a stay pending arbitration, so the Court cannot dismiss the case even if all claims are arbitrable.

"Mandatory arbitration agreements . . . are governed by the Federal Arbitration Act, which evidences a strong policy preference in favor of arbitration." *Mazera*, 565 F. 3d at 1001.  "Although the Federal Arbitration Act requires a court to summarily compel arbitration upon a party's request, the court may do so only if the opposing side has not put the making of the arbitration contract 'in issue.'" *Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F. 4th 832, 835 (6th Cir. 2021) (quoting 9 U.S.C. § 4 ("[U]pon being satisfied that the making of an agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.")).

Where, as here, the non-movant disputes the existence of an agreement to arbitrate, the district court is to evaluate whether the non-movant has "adequately challenged the making of the contract using the standards that apply on summary judgment." *Boykin*, 3 F. 4th at 835.

Under these standards, "the movant asserting the existence of a contract[] must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *Chaudhri v. StockX, LLC*, 19 F. 4th 873, 881 (6th Cir. 2021).  "[I]n order to show that the validity of the agreement is 'in issue' [under 9 U.S.C. § 4], the party opposing arbitration must show a genuine issue of material

5

fact as to the validity of the agreement to arbitrate." *Mazera*, 565 F. 3d at 1001 (second alteration in original). "If a reasonable finder of fact could conclude that no valid agreement to arbitrate exists, the issue is subject to resolution by a jury." *Id*. (quotation marks and citation omitted). In addressing these questions, this Court applies state-law principles governing contract formation. *Chaudhri*, 19 F. 4th at 881.

### III.   Analysis

It is undisputed that the purported agreement here is governed by Michigan law. Under Michigan law, "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich. v. State*, 497 Mich. 197, 235 (2015). "An acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Hergenreder v. Bickford Senior Living Group*, LLC, 656 F.3d 411, 417 (cleaned up; quoting *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 453-54, (2006)).

According to Defendant, Plaintiff had to affirmatively manifest assent to the UPS Tarriff/Terms by clicking the applicable check box, and the full terms were

accessible via a hyperlink prominently displayed with the check-box screen. Defendant argues that courts routinely enforce such "clickwrap" agreements.

What are 'clickwrap' agreements? Clickwrap agreements "require the user to manifest assent to the terms by clicking on an icon." *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n. 1 (6th Cir. 2013) (unpublished).[2] Conversely, "[a] browsewrap agreement discloses terms on a website that offers a product or service to the user, and the user assents by visiting the website to purchase the product or enroll in the service." *Id.* These concepts can also overlap. For such "modified clickwrap agreements," "the customer must take affirmative action—pressing a 'click' button—but, like a browsewrap agreement, the terms being accepted do not appear on the same screen as the accept button, but are available with the use of hyperlink." *Lee v. Panera Bread Co.*, No. 22-11958, 2023 U.S. Dist. LEXIS 49246, at *9 (E.D. Mich. Mar. 6, 2023), *adopted by* 2023 U.S. Dist. LEXIS 48649 (E.D. Mich. Mar. 22, 2023). "Under this hybrid arrangement, the customer is told that consequences will necessarily flow from his assenting click and also is placed on notice of how or where to obtain a full understanding of those consequences." *Id.*

---

[2] *See also Point-and-Click Agreement,* BLACK'S LAW DICTIONARY (12th ed. 2024) ("An electronic version of a shrinkwrap license in which a computer user agrees to the terms of an electronically displayed agreement by pointing the cursor to a particular location on the screen and then clicking. . . . Also termed *e-contract; clickwrap license; clickwrap agreement; user agreement; website-user agreement; web-wrap agreement*.").

This is the exact scenario at issue here.  In any event, "the threshold issue is the same [under each type of agreement]: did the consumer have reasonable notice, either actual or constructive, of the terms of the putative agreement and did the consumer manifest assent to those terms." *Id.*

Plaintiff essentially argues that Defendant fails to meet its initial burden to establish that a contract exists.  Plaintiff first claims that "Defendant has provided no verification or record that definitively states that Plaintiff agreed to the terms of service, or even clicked the necessary box indicating an assent to the Terms of Service." (ECF No. 17, PageID.165).  Plaintiff relatedly highlights that the terms referred to on its shipment receipt apparently differ from the "'UPS Tariff/Terms and Conditions of Service'" at issue here. (ECF No. 17, PageID.165).  The receipt states: "Shipper agrees to the UPS Terms and Conditions of Carriage/Service found at www.ups.com and at UPS service centers." (ECF No. 17-1, PageID.173).  According to Plaintiff: "Therefore, Defendant has not, and cannot, establish the necessary contract that even controls here. This is enough to deny Defendant's motion, as it fails to even identify the subject agreement." (ECF No. 17, PageID.165).

Plaintiff argues further that Defendant inadequately explains what a shipper would see upon clicking the relevant hyperlink(s). (ECF No. 17, PageID.165-66).  Plaintiff relatedly asserts that, as of the date of its briefing, the "'Tarriff/Terms and Conditions'" hyperlink "leads to a page with several hyperlinks of irrelevant

8

information," not to the actual terms and arbitration provisions at issue. (ECF No. 17, PageID.166-67).[3]  And Plaintiff highlights that the UPS Tarriff/Terms require "read[ing] through 28 pages of miniscule font to discover the agreement to arbitrate." (ECF No. 17, PageID.168).  Plaintiff claims that these points are fatal to Defendant's motion, essentially arguing that it could not have had reasonable notice of arbitration provisions that were undisputably "buried" or "hard to find" rather that clearly shown on the first page after opening the relevant hyperlink. (*See* ECF No. 17, PageID.166-68).

As an initial matter, the Court disagrees to the extent Plaintiff claims Defendant cannot meet its initial burden absent (1) some verification or physical record definitively confirming that Plaintiff clicked the necessary box/agreed to the UPS Tarriff/Terms and (2) more specific evidence explaining or showing exactly what was displayed when clicking the applicable hyperlink.  Rather, by providing the purported arbitration agreement, the accompanying declaration, and the related screenshot and shipment record, Defendant met its burden "to produce evidence that would allow a reasonable jury to find that a contract exists." *Chaudhri*, 19 F.4th at 881; *see also Holl v. UPS*, No. 16-05856, 2017 U.S. Dist. LEXIS 153317, at *2-5,

---

[3] *See also* ECF 17-2, PageID.175-201 (declaration from Plaintiff's attorney with attached screenshots providing the page displayed when clicking this hyperlink).

8-14 (N.D. Cal. Sept. 18, 2017) (finding a valid arbitration agreement under similar factual circumstances and based largely on declarations and attached screenshots).

Importantly, Rasmuson, Defendant's manager, unequivocally declares that "Plaintiff was presented with a click-through screen . . . that disclosed that the UPS Tarriff/Terms apply to the shipment and that by creating a shipment, Plaintiff agreed to be bound by the UPS Tariff/Terms. . . ." (ECF No. 15-1, PageID.106).  He states that Plaintiff placed an online guest order, as confirmed by the attached shipping record, which could not be processed without clicking the applicable box and assenting to the UPS Tarriff/Terms.  And this is the check box Plaintiff purportedly was shown and had to click before finalizing its order:



(ECF No. 15, PageID.17; see also ECF No. 15-1, PageID.107).

Contrary to Plaintiff's position, this evidence is sufficient to circumstantially establish that Plaintiff did, in fact, click this box as necessary for its assent to the UPS Tarriff/Terms.  Specifically, accepting this evidence, Plaintiff could not have

processed its order online without clicking the box. *See Tompkins v. 23andMe, Inc.*, Nos. 13-05682, *et al.*, 2014 U.S. Dist. LEXIS 88068, at \*26 (N.D. Cal. Jun. 25, 2014) ("Plaintiffs must have clicked 'I ACCEPT THE TERMS OF SERVICE' when creating an account and registering."), *aff'd* 834 F.3d 1019 (9th Cir. 2016).  And Plaintiff tellingly does not even attempt to counter this point with any evidence, via affidavit, declaration, or otherwise, of its own.   Further, Plaintiff provides no authority denying a motion to compel arbitration or otherwise finding no valid agreement under similar circumstances.

Relatedly, to the extent Plaintiff's physical receipt references "the UPS Terms and Conditions of Carriage/Service found at www.ups.com and at UPS service centers," (ECF No. 17-1, PageID.173), rather than the UPS Tarriff/Terms at issue, this is not fatal to Defendant's position.  At best, the receipt shows that Plaintiff potentially agreed to certain additional terms when dropping its shipment off at the physical UPS store.  But the receipt in no way refutes the evidence of Plaintiff's earlier, explicit assent to the UPS Tarriff/Terms and the included arbitration provisions when initially processing the shipment online.[4]

---

[4] Defendant addresses this issue as follows:

> Plaintiff claims UPS cannot establish which terms apply because a drop-off receipt Plaintiff received from a third party, The UPS Store #1456, references a different set of terms.  Not so.  The receipt makes clear that those terms govern the franchisee's acceptance of a drop-off

Ultimately, Defendant's evidence sufficiently shows that Plaintiff manifested its assent by clicking the applicable check box, even if it never actually clicked the hyperlink to find and review the specific terms at issue. *See Montgomery v. Fid. & Guar. Life Ins. Co.*, 269 Mich. App. 126, 130 (2005) ("It is well established that failure to read an agreement is not a valid defense to enforcement of a contract."); *Holl*, 2017 U.S. Dist. LEXIS 153317 at *13 ("By marking this checkbox, Plaintiff unequivocally represented that he was [on inquiry notice of the relevant terms]— regardless of whether he actually read the terms.").

Next, specifically concerning whether Defendant inadequately explains what a shipper would see upon clicking the relevant hyperlink(s), Rasmuson declares that the hyperlink at issue allowed users "to open and view the UPS Tarriff/Terms." (ECF No. 156-1, PageID.106). This evidence admittedly does not explicitly clarify whether the hyperlink directly opened the terms at issue or else required navigating through other pages or information. Again, however, Plaintiff provides no authority denying a motion to compel arbitration or otherwise finding no valid agreement when presented with similar evidence. Further, as explained below, (1) any

---

package, not the shipping terms entered into between Plaintiff and UPS. . . . Plaintiff's subsequent use of a drop-off location does not undermine, or even relate to, its earlier unambiguous assent to the UPS Tariff/Terms.

(ECF No. 18, PageID.211). The Court agrees that the receipt, at least as relied upon by Plaintiff, is essentially irrelevant to the current matter.

additional steps or navigation beyond the initial hyperlink required to access the UPS Tarriff/Terms is not fatal to Plaintiff's reasonable notice thereof, and (2) Plaintiff had adequate notice under the circumstances here.

With respect to this issue, Rasmuson states that "the click-through screen and accompanying check box" "was substantially similar well . . . after" Plaintiff processed its shipment in August 2023. (ECF No. 15-1, PageID.107).  As provided by Plaintiff's counsel, the online check-box screen more recently showed the following:



(ECF No. 17-2, PageID.176).

Upon clicking the UPS Tarriff/Terms hyperlink depicted above, the user is directed to another webpage listing various other hyperlinks, the first of which is a link to the full UPS Tarriff/Terms. It is admittedly unclear whether this is same page users would have seen when clicking the analogous hyperlink in 2023. That said, because the initial click-through screen and included hyperlinks appear materially unchanged—and absent any indication otherwise from Defendant—the Court accepts Plaintiff's implication that the 2023 process similarly required clicking through these multiple links and pages to access the full terms at issue. Even accepting these facts, however, the Court concludes that Plaintiff was sufficiently on notice of the UPS Tarriff/Terms and included arbitration provisions.

*Holl*, 2017 U.S. Dist. LEXIS 153317, is particularly instructive here. This case also involved a motion from UPS to compel arbitration pursuant to a modified clickwrap agreement directing users, albeit more indirectly, to the UPS Tarriff/Terms then in effect. *Id.* at *2-5, 8-9. The district court explained:

> The UPS My Choice Service Terms, as presented to Plaintiff in this case, comprise a modified clickwrap agreement. . . . [E]nrolling in My Choice requires clicking a checkbox indicating assent to the UPS My Choice Service Terms. . . . [T]hose terms are hyperlinked. The wrinkle in this case has to do with the language of the My Choice terms, which purport to incorporate by reference the UPS Tariff/Terms and Conditions of Service. To access the Tariff/Terms and Conditions of Service, users are not provided with a hyperlink, but instead are directed to navigate to ups.com. From there, the user must intuit how to access the actual text of those terms, which requires clicking a hyperlink at the bottom of the page that reads "Service Terms and Conditions," and then choosing the UPS Tariff/Terms and Conditions of Service out of a list

14

of eight hyperlinked sets of terms.  Only then could Plaintiff have accessed the UPS Tariff/Terms and Conditions of Service and the arbitration clause at issue in this motion.

*Id.* at *11-12.

The district court, while observing that "it is clear that Defendant did not make it particularly easy for users to access the UPS Tariff/Terms," ultimately concluded that the plaintiff had sufficient notice of the terms under the aforementioned circumstances, he unambiguously assented, and a valid arbitration agreement existed. *Id.* at *12-14.  The district court also rejected the plaintiff's argument that the arbitration provisions were unenforceable when buried among other documents and terms. *Id.* at *14 n. 4.  The Ninth Circuit affirmed in a subsequent appeal, despite acknowledging that "locating the arbitration clause at issue here requires several steps and a fair amount of web-browsing intuition." *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019).

Importantly, the process in *Holl* to find and view the arbitration provisions of the UPS Tarriff/Terms was much less clear than the apparent process in this case. Accordingly, like in *Holl*, the Court here concludes that Plaintiff had sufficient notice of the UPS Tarriff/Terms when processing its shipment online, even if opening the full terms and viewing the specific arbitration provisions at issue required several steps.  It is especially persuasive that the plaintiff in *Holl* had reasonable notice of terms despite having to independently search the UPS website to view them.  Here,

in contrast, the hyperlink at most (accepting Plaintiff's implication based on the recently-accessed link) directs users to a single webpage with a link to the full UPS Tarriff/Terms prominently displayed first in a list of various agreements and documents.

Plaintiff's reliance on *Lee*, 2023 U.S. Dist. LEXIS 49246, is unavailing. In granting a motion to compel arbitration pursuant to a similar modified clickwrap agreement, the district court in *Lee* merely observed that "this is not a case where the hyperlink takes the user to a website in which the agreement is buried among multiple pages of irrelevant information. Rather, Plaintiff was directed to the first page of the terms and conditions, which states in upper-case, bold-faced type that disputes related the Sip Club subscription will be resolved through arbitration." *Id.* at *11.

Critically, *Lee* does not *require* that modified clickwrap agreements hyperlink directly to terms with the arbitration provision(s) prominently displayed on the first page, it merely holds that such circumstances provide the reasonable notice and manifestation of assent necessary for a valid agreement. And even relying on *Lee*'s comparison to a hyperlink directing "the user to a website in which the agreement is buried among multiple pages of irrelevant information," *id.* at *11, which is nonbinding dicta, such circumstances are distinguishable from those here.

Here, in contrast, Plaintiff did not have to search a website or wade through multiple pages of irrelevant information to access the UPS Tarriff/Terms.  Again, the record shows instead that the check-box hyperlink specific to the UPS Tarriff/Terms directed users to a *single* webpage with a link to the full UPS Tarriff/Terms prominently displayed first on the page.  And the check-box screen with the initial hyperlink clearly stated that a user agrees to the UPS Tarriff/Terms by creating the shipment, i.e, by checking the box and clicking "Pay and Get Label(s)."  Further, when clicking the second link and opening the complete terms at issue, the first three pages include a table of contents with "Individual Binding Arbitration of Claims" identified in bold type with the relevant section and page number to find these specific terms within the document. (ECF No. 15-1, PageID.111-13).

Under these circumstances, particularly where neither the UPS Tarriff/Terms nor the included arbitration provisions were hidden or otherwise difficult to find, the Court reiterates that Plaintiff had reasonable notice as necessary to enforce the modified clickwrap agreement at issue. *See Lee*, 2023 U.S. Dist. LEXIS 49246 at *11-12 ("Inquiry notice is established if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.") (cleaned up); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1151 (D. Colo. 2012) (the

17

plaintiff was bound by the terms contained in the modified clickwrap agreement because "[w]hile the Subscriber Agreement and arbitration clause may not have been physically presented . . . and did not automatically appear on the subscriber's computer screen . . . , those terms and conditions were not hidden or difficult to find"), *adopted by* 925 F. Supp. 2d 1185 (D. Colo. 2013).

Given this analysis, the Court also rejects Plaintiff's criticism concerning the arbitration provisions' location within "28 pages of miniscule font." (ECF No. 17, PageID.168).  As discussed, the UPS Tarriff/Terms document begins with table of contents clearly identifying the included arbitration provisions.  Therefore, all Plaintiff had to do to access the specific arbitration provisions was open and read this document. *See Crystal Emp. Servs. LLC v. Lodige USA, Inc.*, No. 24-12021, 2025 U.S. Dist. LEXIS 131244, at *9-10 (E.D. Mich. Jul. 10, 2025) (rejecting unconscionability argument that "the [arbitration] clause is buried in the agreement" in part because "Michigan law does not provide relief for a party who has failed to read a contract, in the absence of fraud or deception").

For all these reasons, the Court concludes that Defendant has met its initial burden to establish the existence of a valid arbitration agreement.  The Court must therefore decide whether Plaintiffs have shown "that the validity of the agreement" is "in issue," i.e., that "a genuine issue of material fact [exists] as to the validity of

the agreement[s] to arbitrate." *Mazera*, 565 F.3d at 1001.  Having already rejected each of Plaintiff's specific arguments, however, the answer to this question is 'no.'

The Court also must determine the arbitration agreement's scope, as well as whether Plaintiff's federal statutory claim under 49 U.S.C. § 14706 is non-arbitrable. *McGee*, 941 F. 3d at 865.  Importantly, these issues are not disputed in this matter. And where the agreement states that "any controversy or claim . . . arising out of or related to the provision of services by UPS . . . shall be resolved in its entirety by individual . . . binding arbitration," (ECF No. 15-1, PageID.139), it covers all Plaintiff's claims asserted in this case.  Lastly, the Court finds nothing to suggest that Congress intended Plaintiff's federal statutory claim to be non-arbitrable.

* * *

For the reasons given, the Court ORDERS that Defendant's motion to compel arbitration (ECF No. 15) is GRANTED.

IT IS FURTHER ORDERED that the case shall be stayed pending arbitration of all Plaintiff's claims.

Dated: March 13, 2026                    s/Robert J. White
                                               Robert J. White
                                                 United States District Judge